# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

-------------------------------------------------------------------------

ROGER WAYNE MITCHUM,

                          Plaintiff,

vs.

EQUIFAX INFORMATION
SERVICES, LLC; EXPERIAN
INFORMATION SOLUTIONS, INC;
TRANS UNION, LLC; and
AMERICAN EXPRESS COMPANY,

                          Defendants.

-------------------------------------------------------------------------

Civil Action No.:

**JURY TRIAL DEMANDED**

## COMPLAINT

Roger Wayne Mitchum ("Plaintiff" or "Mr. Mitchum), a living, breathing consumer, brings this Complaint against Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union, LLC ("Trans Union") (collectively, the "credit bureau defendants"), and AMERICAN EXPRESS COMPANY ("American Express" or "AMEX") (all defendants collectively, "Defendants"), states as follows:

## INTRODUCTION

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Defendant acknowledges this potential for misuse and resulting damage every time they sell their credit monitoring services to a consumer.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      Defendant Equifax is a CRA as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

5.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

6.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

7.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

8.    The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the
> establishment of all sorts of computerized data banks, the individual is
> in great danger of having his life and character reduced to impersonal
> "blips" and key-punch holes in a stolid and unthinking machine which
> can literally ruin his reputation without cause, and make him
> unemployable or uninsurable, as well as *deny him the opportunity to
> obtain a mortgage or buy a home. We are not nearly as much concerned
> over the possible mistaken turn-down of a consumer for a luxury item
> as we are over the possible destruction of his good name without his
> knowledge and without reason. * * * [A]s Shakespeare said, the loss of
> one's good name is beyond price and makes one poor indeed* (emphasis
> added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec.

36570 (1970)].

9.    The FCRA also requires CRAs to conduct a reasonable reinvestigation to

determine whether information disputed by consumers is inaccurate and record the

current status of the disputed information, or delete the disputed information, before

the end of the 30-day period beginning on the date on which the CRA receives the

notice of dispute from the consumer. This mandate exists to ensure that consumer

disputes are handled in a timely manner and that inaccurate information contained

within a consumer's credit report is corrected and/or deleted so as to not prevent said

consumer from benefiting from his or her credit and obtaining new credit.

10.    The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.    In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(4).

12.    Plaintiff's claims arise out of the credit bureau defendants' blatantly inaccurate credit reporting, wherein Defendants Equifax, Experian, and Trans Union reported to Plaintiff's potential creditors that she is "deceased" and does not have a credit score. After Plaintiff's multiple disputes of the credit bureau defendants' deceased reporting, Defendant American Express verified that Plaintiff is deceased (despite possessing documentary proof that Plaintiff is living) and continued to report the same to the credit bureau defendants.

13.    Accordingly, Plaintiff brings claims against Defendants Equifax, Experian, and Trans Union for failing to follow reasonable procedures to assure the maximum

possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

14.     Plaintiff also brings a claim against Defendant American Express for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the credit bureau defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

15.     This action seeks actual, statutory, and punitive damages, costs and attorneys' fees for Plaintiff against Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq., as described herein.

## **THE PARTIES**

16.     Plaintiff Roger Wayne Mitchum ("Plaintiff" or "Mr. Mitchum) is a natural person who resides in the State of South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17.     Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company resides in the State of Georgia and in the Northern District.

18.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

19.     Defendant Experian Information Solutions, LLC ("Experian") is a limited liability company that conducts business in the State of Georgia and in the Northern District.

20.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

21.     Defendant Trans Union, LLC ("Trans Union") is a limited liability company that conducts business in the State of Georgia and in the Northern District.

22.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

23.     Defendant American Express Company ("Defendant AMEX" or "AMEX") is a multinational financial services corporation with a principal place of business located at 200 Vesey Street, Lower Manhattan, New York, NY 10285, and is authorized to do business in the State of Georgia, including within this District.

24.     Defendant AMEX is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

27.     Plaintiff mailed multiple written disputes regarding inaccurate information in his Equifax credit report to Equifax located in Fulton County; Atlanta, Georgia.

28.     Defendant Equifax received Plaintiff's multiple written disputes in Fulton County; Atlanta, Georgia.

29.    Upon receipt of Plaintiff's disputes, Defendant Equifax forwarded such disputes to Defendant AMEX via Automated Consumer Dispute Verification electronic forms. Upon completion of its investigations pursuant to 15 U.S.C. § 1681s-2(b), Defendant AMEX responded to Defendant Equifax's electronic communications, which originated from Atlanta, Georgia, by sending its results electronically to Defendant Equifax in Fulton County; Atlanta, Georgia

30.    Defendant Equifax then processed the dispute results from Defendant AMEX at its National Consumer Assistance Center in Atlanta, Georgia, and mailed Plaintiff its final dispute results from Atlanta, Georgia.

## FACTS

### The Credit Bureau Defendant's Practices Concerning the Sale of Credit Reports on the "Deceased"

31.    Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

32.    Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendants like Equifax, Experian, and Trans Union, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

33.    Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendants Equifax, Experian, and Trans Union, must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes."

34.    Defendants Equifax, Experian, and Trans Union routinely place a "deceased" notation or marking on credit reports when they are advised by any of their many data furnishing sources (such as banks and debt collectors) that a given consumer is deceased.

35.    Defendants Equifax, Experian, and Trans Union's furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the "ECOA" field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

36.    Defendants Equifax, Experian, and Trans Union do not request or require a death certificate from any of their data sources which advise that a consumer is "deceased" before placing a "deceased" mark in that consumer's credit file.

37.    Defendants Equifax, Experian, and Trans Union do not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

38.    Defendants Equifax, Experian, and Trans Union do not independently verify with any source or furnisher that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

39.    In some cases, in order to assure accuracy, Defendants Equifax, Experian, and Trans Union may send letters and/or other communications to consumers when certain information that may be considered suspicious or unreliable is furnished about said consumers to be placed in their credit files, such as in cases where consumers have a freeze or fraud alert on their credit report, or in accordance with certain state laws, such as the consumer laws of Colorado. Defendants Equifax, Experian, and Trans Union do not have any procedure to notify consumers (such as a next of kin or executor or administrator of the consumer's estate) when an "X" deceased code is furnished to it to be placed in said consumer's credit file or report.

40.    Defendants Equifax, Experian, and Trans Union regularly receive the "Death Master File" from the Social Security Administration, including weekly and/or monthly updates, listing by social security number those consumers that the government believes to be deceased. But Defendants Equifax, Experian, and Trans Union do not cross-reference the "X" code received from data furnishers with the Death Master File in order to determine whether any given consumer reported as

deceased via a furnishing source is also on the Death Master File before selling a credit report about said consumer, or at any time.

41.     Defendants Equifax, Experian, and Trans Union will only use the Death Master File to sell additional products for an additional fee, which are designed to show whether a given consumer is truly deceased.

42.     Defendants Equifax, Experian, and Trans Union do not employ any procedures at all to assure that a consumer with a "deceased" mark on his/her report is, in fact, actually deceased before placing the "deceased" mark on that consumer's report and selling that report for profit.

43.     Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Defendants Equifax, Experian, and Trans Union do not employ any procedures to assure that a consumer with a "deceased" mark on his/her report is, in fact, actually deceased before placing the "deceased" mark in that consumer's file.

44.     Even in instances where the purportedly deceased consumer communicates directly with Defendants Equifax, Experian, and Trans Union, Defendants do not employ any procedures to assure that a consumer with a "deceased" mark on his/her report is, in fact, actually deceased before placing the "deceased" mark on that consumer's report.

45.   Once a "deceased" mark is placed upon a consumer's report, Defendants Equifax, Experian, and Trans Union will not calculate and will not provide a credit score for that consumer.

46.   Upon Defendants Equifax, Experian, and Trans Union's reports with a "deceased" mark sold to third parties, Defendants Equifax, Experian, and Trans Union never calculate or provide a credit score for that consumer and instead reports that consumer's credit score as "N/A."

47.   Defendants Equifax, Experian, and Trans Union know that third party credit issuers require a credit score in order to process a given credit application.

48.   Defendants Equifax, Experian, and Trans Union know that consumers without credit scores are unable to secure any credit from most credit issuers.

49.   Defendants Equifax, Experian, and Trans Union know that living consumers are routinely turned down for credit specifically because they are reporting them as "deceased" and without a credit score.

50.   Defendants Equifax, Experian, and Trans Union have been put on notice for years through consumer disputes and lawsuits that living, breathing consumers are turned down for credit specifically because they are reporting them as "deceased" and without a credit score.

51.    Defendants Equifax, Experian, and Trans Union have received and documented many disputes from consumers complaining that their credit reports had them erroneously marked as "deceased."

52.    Defendants Equifax, Experian, and Trans Union know that thousands of consumers are erroneously marked as "deceased" on their credit reports via an erroneous furnishing of the "X" code, even when said consumers (and their dates of birth and social security numbers) are not on the Death Master File and are, in fact, alive.

53.    Nevertheless, Defendants Equifax, Experian, and Trans Union do not employ any procedures to assure that a consumer marked as "deceased" on their credit reports is, in fact, deceased.

54.    Even consumers who dispute the erroneous "deceased" status on their Equifax, Experian, and Trans Union credit report continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" code in the first instance decides to change the code.

55.    Defendants Equifax, Experian, and Trans Union do not have any independent procedure to change an erroneous deceased status on their own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the

deceased status upon a consumer's report, a reinvestigation which is triggered by a consumer dispute.

56.   Nor do Defendants Equifax, Experian, and Trans Union employ any procedures to limit or stop the furnishing of reports to third parties for consumers that they have marked as "deceased" under any circumstances.

57.   For years after a consumer's actual death, Defendants Equifax, Experian, and Trans Union will continue to sell credit reports about that consumer.

58.   Defendants Equifax, Experian, and Trans Union will only remove a deceased consumer's file from their respective credit reporting databases when it is no longer valuable to them—meaning that no one is continuing to purchase reports about that consumer.

59.   Defendants Equifax, Experian, and Trans Union charge third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as they would for any other report.

60.   Defendants Equifax, Experian, and Trans Union profit from the sale of reports on deceased consumers.

61.     Defendants Equifax, Experian, and Trans Union have in their credit reporting database many "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

62.     Defendants Equifax, Experian, and Trans Union know that truly deceased consumers do not apply for credit.

63.     Defendants Equifax, Experian, and Trans Union know that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Defendants Equifax, Experian, and Trans Union to be a common and major source of identity theft.

64.     Defendants Equifax, Experian, and Trans Union know that identity theft and credit fraud are serious and widespread problems in our society.

65.     Defendants Equifax, Experian, and Trans Union warn the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased, and require relatives to provide a death certificate or executorship papers, among other forms of proof, before accessing the deceased consumer's credit information or report.

66.    Defendants Equifax, Experian, and Trans Union have no similar death certificate, executorship paper, or any other proof requirements for their data sources, which report a consumer as deceased or for the purchasers of their reports who access the purportedly deceased consumer's information.

67.     Defendants Equifax, Experian, and Trans Union sell reports on supposedly deceased consumers to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

68.    For consumers who are deceased, there rarely, if ever, exists a permissible purpose under the FCRA for Defendants to sell their credit reports, absent a court order.

69.    Defendants Equifax, Experian, and Trans Union know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

**Berkeley Ford Denies Plaintiff Credit Due to Defendants Equifax and Trans Union's Inaccurate Credit Reporting**

70.    On or about Mar 2, 2020, Plaintiff sought to obtain auto loans for two trucks from Berkeley Ford and submitted a credit application.

71.    Shortly thereafter, in or about Mar 2, 2020, Berkeley Ford denied Plaintiff's credit application based upon the contents of Plaintiff's Equifax credit report.

72.    Specifically, Defendants Equifax and Trans Union were reporting deceased on his credit report.

73.    Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his credit application had been denied.

### Plaintiff's First Disputes with Defendants Equifax, Experian, and Trans Union on April 1, 2020

74.    On or about April 1, 2020, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff called and disputed online to Defendants Equifax, Experian, and Trans Union, disputing the deceased notations that was reporting in his credit reports. Plaintiff requested that Defendants Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and send his corrected copies of his credit reports.

### METHOD - The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

75.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

76.    The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

77.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

78.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

79.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

80.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

81.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

82.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

83.    The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

84.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

## The Credit Bureau's Responses to Plaintiff's Disputes

85.    Upon receiving Plaintiff's written disputes in April, Equifax, Experian, and Trans Union sent ACDVs to the following furnisher regarding the following credit accounts Plaintiff disputed:

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

86.    American Express verified for Equifax, Experian, and Trans Union that Account #349992XXXXXXXXXX belongs to Plaintiff, that Plaintiff is in fact deceased, and that the account is accurately reporting on his Equifax credit report.

87.    Equifax, Experian, and Trans Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax failed to properly reinvestigate and delete the deceased notation on disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

## Plaintiff's Continues to Dispute with Defendants Equifax, Experian, and Trans Union

88.     In or about April 2020 and November 2020, Plaintiff disputed multiple times to Defendants Equifax, Experian, and Trans Union, disputing the deceased notations that was reporting in his credit reports.

## The Credit Bureau's Responses to Plaintiff's Disputes

89.     Upon receiving Plaintiff's written disputes, Equifax, Experian, and Trans Union sent ACDVs to the following furnisher regarding the following credit accounts Plaintiff disputed:

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

90.     American Express continuously verified for Equifax, Experian, and Trans Union that Account #349992XXXXXXXXXX belongs to Plaintiff, that Plaintiff is in fact deceased, and that the account is accurately reporting on his Equifax credit report.

91.     Equifax, Experian, and Trans Union repeatedly completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute

reinvestigation to Plaintiff. Equifax failed to properly reinvestigate and delete the deceased notation on disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

## Hoover Motors Denies Plaintiff Credit Due to Defendants Equifax, Experian, and Trans Union's Inaccurate Credit Reporting on October 10, 2020

92.   On or about October 10, 2020, Plaintiff sought to obtain auto loans for two trucks from Hoover Motors and submitted a credit application.

93.   Shortly thereafter, in or about October 10, 2020, Hoover Motors denied Plaintiff's credit application based upon the contents of Plaintiff's Equifax, Experian, and Trans Union credit reports.

94.   Specifically, Defendants Equifax, Experian, and Trans Union were reporting deceased on his credit reports.

95.   Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his credit application had been denied.

## Global Lending Services Denies Plaintiff Credit Due to Defendant Experian's Inaccurate Credit Reporting on October 12, 2020

96.    On or about October 12, 2020, Plaintiff sought to obtain auto loans for two trucks from Global Lending Services and submitted a credit application.

97.    Shortly thereafter, in or about October 12, 2020, Global Lending Services denied Plaintiff's credit application based upon the contents of Plaintiff's Experian credit report.

98.    Specifically, Defendant Experian was reporting deceased on his credit report.

99.    Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his credit application had been denied.

**Ally Financial Denies Plaintiff Credit Due to Defendant Equifax and Trans Union's Inaccurate Credit Reporting on October 17, 2020**

100.   On or about October 17, 2020, Plaintiff sought to obtain auto loans for two trucks from Ally Financial and submitted a credit application.

101.   Shortly thereafter, in or about October 17, 2020, Ally Financial denied Plaintiff's credit application based upon the contents of Plaintiff's Equifax and Trans Union credit reports.

102.   Specifically, Defendants Equifax and Trans Union were reporting deceased on his credit reports.

103.   Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his credit application had been denied.

### Plaintiff Receives His Experian Report and Discovers that Defendant Experian is Still Reporting Him as Deceased

104.   As of November 23, 2020, the deceased notation was reflected in the following tradelines on Plaintiff's Experian credit report:

> **AMERICAN EXPRESS**
> **Account Number 349992XXXXXXXXXX**
> **Account Status: Consumer Deceased**

105.   As of November 23, 2020, the above-referenced tradeline/account was reporting inaccurately in Plaintiff's Experian credit report because Plaintiff is not deceased.

### Plaintiff's Disputes with Defendants Equifax, Experian, and Trans Union on December 5, 2020

106.   On or about December 5, 2020, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff mailed a written dispute

to Defendants Equifax, Experian, and Trans Union, via certified mail, disputing the deceased notations that was reporting in his credit reports. Plaintiff requested that Defendants Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and send his corrected copies of his credit reports.

107. Plaintiff's December 5, 2020 disputes specifically included his full name, date of birth, Social Security number, driver's license, Social Security card, and current address so that the credit bureaus would be able to properly identify his and locate his credit files.

### The Credit Bureau's Responses to Plaintiff's Disputes

108. Upon receiving Plaintiff's written disputes in December 2020, Equifax, Experian, and Trans Union sent ACDVs to the following furnisher regarding the following credit accounts Plaintiff disputed:

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

109.   American Express verified for Equifax, Experian, and Trans Union that Account #349992XXXXXXXXXX belongs to Plaintiff, that Plaintiff is in fact deceased, and that the account is accurately reporting on his Equifax credit report.

110.   Equifax and Experian completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax and Experian failed to properly reinvestigate and delete the deceased notation on disputed credit account, which continued to appear on Plaintiff's Equifax and Experian credit reports.

111.   Upon information and belief, Trans Union updated his report to no longer report as deceased.

### Chrysler Capital Denies Plaintiff Credit Due to Defendant Experian's Inaccurate Credit Reporting on December 16, 2020

112.   On or about December 16, 2020, Plaintiff sought to obtain auto loans for two trucks from Chrysler Capital and submitted a credit application.

113.   Shortly thereafter, in or about December 16, 2020, Chrysler Capital denied Plaintiff's credit application based upon the contents of Plaintiff's Experian credit report.

114.   Specifically, Defendant Experian was reporting deceased on his credit report.

115.   Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his credit application had been denied.

### Plaintiff Receives His Equifax Report and Discovers that Defendant Equifax is Still Reporting Him as Deceased

116.   As of December 17, 2020, the deceased notation was reflected in the following tradelines on Plaintiff's Equifax credit report:

> **AMERICAN EXPRESS**
> **Account Number 349992XXXXXXXXXX**
> **Account Status: Consumer Deceased**

117.   As of December 17, 2020, the above-referenced tradeline/account was reporting inaccurately in Plaintiff's Equifax credit report because Plaintiff is not deceased.

### Home Depot Denies Plaintiff Credit Due to Defendant Equifax's Inaccurate Credit Reporting on January 2, 2021

118.   On or about January 2, 2021, Plaintiff sought to obtain auto loans for two trucks from Home Depot and submitted a credit application.

119.   Shortly thereafter, in or about January 2, 2021, Home Depot denied Plaintiff's credit application based upon the contents of Plaintiff's Equifax credit report.

120.   Specifically, Defendant Equifax was reporting deceased on his credit reports.

121.   Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his credit application had been denied.

**Plaintiff's Disputes with Defendants Equifax and Experian January 26, 2021**

122.   On or about January 26, 2021, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff mailed a written dispute to Defendants Equifax and Experian, via certified mail, disputing the deceased notations that was reporting in his credit reports. Plaintiff requested that Defendants Equifax and Experian reinvestigate the disputed information, correct the reporting, and send his corrected copies of his credit reports.

123.   Plaintiff's January 26, 2021 disputes specifically included his full name, date of birth, Social Security number, driver's license, Social Security card, and current address so that the credit bureaus would be able to properly identify his and locate his credit files.

## The Credit Bureau's Responses to Plaintiff's Disputes

124.   Upon receiving Plaintiff's written disputes sent in January 2021, Equifax and Experian sent ACDVs to the following furnisher regarding the following credit accounts Plaintiff disputed:

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

- **American Express**
  **Account Number 349992XXXXXXXXXX**
  **Responsibility: Consumer Deceased**

125.   American Express verified for Equifax and Experian that Account #349992XXXXXXXXXX belongs to Plaintiff, that Plaintiff is in fact deceased, and that the account is accurately reporting on his Equifax and Experian credit report.

126.   Equifax and Experian completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax failed to properly reinvestigate and delete the deceased notation on disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

**Plaintiff's Disputes with Defendants Equifax and Experian on February 26, 2021**

127.   On or about February 26, 2021, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff mailed a written dispute to Defendants Equifax and Experian, via certified mail, disputing the deceased notations that was reporting in his credit reports. Plaintiff requested that Defendants Equifax and Experian reinvestigate the disputed information, correct the reporting, and send his corrected copies of his credit reports.

128.   Plaintiff's February 26, 2021 disputes specifically included his full name, date of birth, Social Security number, driver's license, Social Security card, and current address so that the credit bureaus would be able to properly identify his and locate his credit files.

**The Credit Bureau's Responses to Plaintiff's Disputes**

129.   Upon receiving Plaintiff's written disputes from February 2021, Equifax and Experian sent ACDVs to the following furnisher regarding the following credit accounts Plaintiff disputed:

- **American Express
  Account Number 349992XXXXXXXXXX
  Responsibility: Consumer Deceased**

- **American Express**

**Account Number 349992XXXXXXXXXX**
**Responsibility: Consumer Deceased**

130.  American Express verified for Equifax and Experian that Account #349992XXXXXXXXXX belongs to Plaintiff, that Plaintiff is in fact deceased, and that the account is accurately reporting on his Equifax credit report.

131.  Equifax, Experian, and Trans Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax failed to properly reinvestigate and delete the deceased notation on disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

**Plaintiff Receives His Equifax Report and Discovers that Defendant Equifax is Still Reporting Him as Deceased**

132.  As of March 12, 2021, the deceased notation was reflected in the following tradelines on Plaintiff's Equifax credit report:

**AMERICAN EXPRESS**
**Account Number 349992XXXXXXXXXX**
**Account Status: Consumer Deceased**

133.   As of March 12, 2021, the above-referenced tradeline/account was reporting inaccurately in Plaintiff's Equifax credit report because Plaintiff is not deceased.

**Plaintiff's Disputes with Defendant Experian on April 20, 2021**

134.   On or about April 20, 2021, extremely shocked, surprised, and embarrassed at Defendant's inaccurate reporting, Plaintiff mailed a written dispute to Defendant Equifax, via certified mail, disputing the deceased notations that was reporting in his credit reports. Plaintiff requested that Defendant Equifax reinvestigate the disputed information, correct the reporting, and send his corrected copies of his credit reports.

135.   Plaintiff's April 20, 2021disputes specifically included his full name, date of birth, Social Security number, driver's license, Social Security card, and current address so that the credit bureaus would be able to properly identify his and locate his credit files.

**Equifax's Response to Plaintiff's Apr 1, 2021 Disputes**

136.   Defendant Equifax responded by asking they could not locate the Plaintiff's credit file in their database and requested more information.

**<u>CLAIMS FOR RELIEF</u>**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

137.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-134 as if fully stated herein.

138.   The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

139.   On multiple occasions, Defendants Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

140.   Despite actual and implied knowledge that Plaintiff is not dead, Defendants Equifax, Experian, and Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

141.   Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintain concerning Plaintiff.

142.   As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to

purchase and benefit from her credit; being chilled from seeking credit opportunities; the expenditure of time and money disputing and trying to correct the blatantly inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials, fear of financial difficulty, and the inability to obtain credit for important life purchases.

143. Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

144. Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendants Equifax, Experian, and Trans Union)

145. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-136 as if fully stated herein.

146.   The FCRA mandates that Defendants Equifax, Experian, and Trans Union conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act impose a 30-day time limitation for the completion of such an investigation. Id.

147.   The FCRA provides that if Defendants Equifax, Experian, and Trans Union conduct an investigation of disputed information and confirm that the information is in fact inaccurate, or are unable to verify the accuracy of the disputed information, they are required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

148.   On multiple occasions during 2020 and 2021, Plaintiff sent written disputes to Defendants Equifax, Experian, and Trans Union, pleading with them to comply with their statutory reinvestigation obligations and correct and/or delete specific items in his credit files that are patently inaccurate, misleading, and highly damaging to his and his ability to obtain credit, namely, references to his being "deceased."

149.   Either Defendants Equifax, Experian, and Trans Union conducted no investigation of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit files, namely, the deceased notations.

150.   Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

151.   As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from his credit; being chilled from seeking credit opportunities; the expenditure of time and money disputing and trying to correct the blatantly inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials, fear of financial difficulty, and the inability to obtain credit for important life purchases.

152.   Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

153.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681s-2(b)
### Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
### (First Claim For Relief Against Defendant AMEX)

154.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-136 as if fully stated herein.

155.   Defendant AMEX published the negative entries to Defendants Experian, Equifax, and Trans Union.

156.   Defendant AMEX violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of its inaccurate representations; by failing to review all relevant information regarding the same; by failing to accurately respond to Defendants Experian, Equifax, and Trans Union; by failing to correctly report results of an accurate investigation to Defendants Experian, Equifax, and Trans Union; and by failing to permanently and lawfully correct its own internals records to prevent the re-reporting of its inaccurate representations to Defendants Experian, Equifax, and Trans Union.

157.   As a result of Defendant AMEX's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her good credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

158.   Defendant AMEX's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

159.   Plaintiff is entitled to recover attorney's fees and costs from Defendant AMEX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a.   Determining that Defendants negligently and/or willfully violated the FCRA;

b.   Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the

FCRA; and

d.  Granting further relief, in law or equity, as this Court may deem appropriate

and just.

## **DEMAND FOR JURY TRIAL**

160.    Plaintiff demands a trial by jury.

Dated: July 16, 2021

**JOSEPH P. MCCLELLAND, LLC**

/s/ Joseph P. McClelland, III
Joseph P. McClelland, III, Esq.
545 N. McDonough Street, Suite 210
Decatur, GA 30030
Telephone: (770) 775-0938
Fax: (470) 468-0070
Email: joseph@jacksonlaws.com

*ATTORNEY FOR PLAINTIFF*
